UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE HUMMER TRANSPORTATION, | CASE NOS. CV F 13-1640 LJO |
| Debtor, | **DECISION ON APPEAL OF BANKRUPTCY COURT ORDER** (Docs. 11.) |
| _____/ | |
| HUME, SMITH, GEDDES, GREEN & SIMMONS, LLP, and NATIONAL CONTINENTAL INSURANCE COMPANY, | |
| Appellants, | |
| v. | |
| ROBERT A. HAWKINS, Chapter 7 Trustee, | |
| Appellee. | |
| _____/ | |

### PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court must best manage its voluminous caseload without incurring needless delay and misuse of its limited resources. As such, this Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Dianne Feinstein and

Barbara Boxer to address this Court's inability to accommodate the parties and this action.

## INTRODUCTION

Appellants Hume, Smith, Geddes, Green & Simmons, LLP ("Hume Smith") and National Continental Insurance Company ("NCI") appeal bankruptcy court approval to employ attorney Kenneth J. Allen ("Mr. Allen") to pursue claims against Hume Smith and NCI for the bankruptcy estate of debtor Hummer Transportation, Inc. ("Hummer").  Mr. Allen represented Kimberly Spoa-Harty and Jesse Harty (collectively the "Hartys") in an underlying personal injury action ("personal injury action") and obtained a $5 million judgment for the Hartys against Hummer, which did not satisfy the judgment.  The Hartys filed an involuntary Chapter 7 bankruptcy against Hummer, and appellee Robert Hawkins ("Trustee Hawkins"), trustee for the Hummer bankruptcy estate, obtained bankruptcy court approval to hire Mr. Allen to pursue for the bankruptcy estate malpractice claims against Hume Smith and bad faith claims against NCI, Hummer's insurer.  Hume Smith and NCI contend that the bankruptcy court erred to approve Mr. Allen's employment in that Mr. Allen failed to disclose facts as to his representation of the Hartys and financial arrangement with them which create conflicts of interest as to the Hummer bankruptcy.  Trustee Hawkins and fellow appellee Kenneth J. Allen Law Group ("firm"), Mr. Allen's law firm, respond that Hume Smith and NCI pursue this appeal to attempt to seek "a tactical advantage" in the malpractice/bad faith action against Hume Smith and NCI and to interfere with Trustee Hawkins' "right to select his own special litigation counsel," Mr. Allen and his firm.  For the reasons discussed below, this Court AFFIRMS the bankruptcy court's approval of Mr. Allen to pursue malpractice and bad faith claims for the Hummer bankruptcy estate.

## BACKGROUND

### The Personal Injury Action

Kimberly Spoa-Harty was seriously injured in a traffic collision with a Hummer tractor-trailer rig.  The Hartys, through Mr. Allen, pursued the personal injury action in Indiana state court against Hummer, which was represented by Hume Smith.  Default as to liability was entered against Hummer based on inadequate discovery responses.  The Hartys offered to settle

1    with Hummer for $750,000 and within liability limits of Hummer's insurance policy.  NCI,

2    through Hume Smith, rejected the offer.  In 2009, after a trial on damages, the Hartys obtained

3    a $5.1 million judgment against Hummer.  NCI, as Hummer's insurer, paid policy limits of

4    $842,000, and the remainder of the judgment remains unsatisfied.

5                                    **Hummer's Bankruptcy**

6            In September 2011, the Hartys filed an involuntary bankruptcy against Hummer, and

7    Trustee Hawkins was appointed the chapter 7 trustee.  The Hartys were the only petitioning

8    creditors.  Hummer's assets are limited to a claim against NCI for failure to settle the Hartys'

9    claims within policy limits and a claim against Hume Smith for malpractice in its defense of

10   Hummer in the personal injury action.

11           In the bankruptcy, the Hartys filed claims exceeding $5.1 million.  On August 6, 2013,

12   NCI filed a $1.095 million proof of claim for its payment on the personal injury judgment,

13   uncovered attorney fees and costs, and unpaid insurance premiums.

14              **Applications And Challenges To Employ Mr. Allen**

15           Trustee Hawkins filed his July 13, 2012 application ("first application") to employ Mr.

16   Allen as special counsel to pursue malpractice claims against Hume Smith and bad faith claims

17   against NCI.  Trustee Hawkins provided neither Hume Smith nor NCI notice of the first

18   application since neither were creditors of the Hummer bankruptcy estate.   Mr. Allen's

19   declaration to support the first application incorrectly stated:  "No member of my office has

20   performed any services for the trustee or any creditor or party in interest prior to the date of

21   this Declaration."  Hume Smith and NCI note that proper disclosure required revealing that Mr.

22   Allen had represented the Hartys in the personal injury action and to enforce their judgment

23   along with his fee arrangement with the Hartys.  The bankruptcy court entered a July 23, 2012

24   order ("first employment order") to authorize Mr. Allen's employment.

25           Trustee Hawkins filed an October 5, 2012 application ("second application") to correct

26   payment terms that had been inadvertently misstated in the first employment order.  The

27   bankruptcy court's November 10, 2012 order ("second employment order") corrected payment

28   terms but erroneously indicated that Mr. Allen would pursue a malpractice/bad faith action in

1  Fresno County Superior Court.

2      After approval of his employment, Mr. Allen filed for Trustee Hawkins in Indiana state

3  court a malpractice/bad faith action against Hume Smith and NCI ("malpractice/bad faith

4  action") to allege that Hume Smith and NCI did not cooperate with discovery and did not settle

5  with the Hartys to Hummer's detriment in the personal injury action.

6      After Hume Smith informed Trustee Hawkins of deficiencies in the first and second

7  employment applications, Trustee Hawkins filed a July 19, 2013 application ("third

8  employment application") to employ Mr. Allen and which Hume Smith and NCI characterize

9  to lack necessary disclosures, including Mr. Allen's fee arrangement with the Hartys.  Hume

10  Smith and NCI responded with papers to challenge Mr. Allen's employment given:

11      1.    Non-disclosure of Mr. Allen's long-standing attorney-client relationship with

12  the Hartys;

13      2.    Mr. Allen's status as a Hummer creditor based on his contingency fee

14  arrangement with the Hartys;

15      3.    Mr. Allen's status as a witness in the malpractice/bad faith action against Hume

16  Smith and NCI; and

17      4.    An actual conflict of interest arising from Mr. Allen's representation of the

18  Hartys and Trustee Hawkins.

19      Trustee Hawkins and the firm characterize as inadvertent failure to disclose Mr. Allen's

20  representation of the Hartys to the bankruptcy court.

21  **Bankruptcy Court Ruling**

22      The bankruptcy court conducted an August 21, 2013 hearing to address Hume Smith's

23  opposition to the third employment application and its motion to set aside Mr. Allen's

24  employment.  At the hearing, NCI requested a continuance for discovery into issues as to Mr.

25  Allen's representation of the Hartys and Trustee Hawkins.  The bankruptcy court's September

26  12, 2013 order ("September 12 order") approved the third employment application for Mr.

27  Hawkins, denied Hume Smith's motion to vacate the first and second employment orders, and

28  concluded that:

4

1.     Mr. Allen "has no claim enforceable against Hummer and is disinterested";

2.     Mr. Allen's role in the malpractice/bad faith action "is not a disqualifying interest";

3.     Mr. Allen's representation of the bankruptcy estate in the malpractice/bad faith action "does not presently conflict with or limit his continued representation of the Hartys;"

4.     "There has been no showing that Allen's testimony will be necessary" in the malpractice/bad faith action; and

5.     The "interests of the estate are best served by Allen's continued participation" despite Mr. Allen's "failure to disclose his connections" to the Hartys.

The September 12 order did not permit discovery into Mr. Allen's representation of the Hartys or Trustee Hawkins.

### DISCUSSION[1]

### Standard Of Review Of Bankruptcy Court Orders

Hume Smith and NCI contend that the September 12 order erroneously:

1.     Failed to find Mr. Allen's actual conflict of interest to represent the Hartys and the Hummer bankruptcy estate and to recognize that Mr. Allen will be a witness in the malpractice/bad faith action where he will take positions inconsistent to those asserted in the personal injury action;

2.     Approved Mr. Allen's employment without disclosure of Mr. Allen's fee arrangement with the Hartys and the nature of his current representation of the Hartys; and

3.     Denied Hume Smith and NCI to conduct discovery into Mr. Allen's

---

[1] The parties' opening papers make cursory points regarding Hume Smith's and NCI's respective standing to pursue this appeal. This Court need not address the standing issue in that the September 12 order did not address standing, the parties' opening papers provide limited briefing on the issue, and this Court addresses below the merits of this appeal. Moreover, this Court need not address standing issues raised for the first time in Hume Smith and NCI's reply papers. "Reply papers should be limited to matters raised in the opposition papers. It is improper for the moving party to 'shift gears' and introduce new facts or different legal arguments in the reply brief than presented in the moving papers." *Clark v. County of Tulare*, 755 F.Supp.2d 1075, 1090 (E.D. Cal. 2010). "Parties cannot raise a new issue for the first time in their reply brief." *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990). "Arguments not raised by a party in its opening brief are deemed waived." *U.S. v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006). A "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

1    connections to the Hummer bankruptcy estate.

2         Bankruptcy court orders regarding employment, disqualification, and compensation of

3    professionals are reviewed for an abuse of discretion.  *In re Thomas*, 476 B.R. 579, 584 (N.D.

4    Cal. 2012).   An abuse of discretion arises if the bankruptcy court bases its ruling on an

5    erroneous view of the law or clearly erroneous factual findings.   *In re Thomas*, 476 B.R. at

6    584.

7         A district court reviews de novo a bankruptcy court's conclusions of law.  *Paulman v.*

8    *Gateway Venture Partners III*, 163 F.3d 570, 575 (9th Cir. 1998).  A bankruptcy court's factual

9    determinations are reviewed for clear error.  *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010);

10   *see* F.R.Bankr.P. 8013 (bankruptcy judge's findings of fact "shall not be set aside unless clearly

11   erroneous").  "A court's factual determination is clearly erroneous if it is illogical, implausible,

12   or without support in the record."  *In re Retz*, 606 F.3d at 1196.

13        "Mixed questions of law and fact are reviewed de novo.  Such a question arises when

14   the historical facts are established, the rule of law is undisputed, and the issue is whether the

15   facts satisfy the legal rule."  *In re OTA*, 179 B.R. 149, 155 (B.A.P. 9th Cir. 1995).   Mixed

16   questions are reviewed "de novo because they require consideration of legal concepts and the

17   exercise of judgment about the values that animate legal principles."  *In re Bammer*, 131 F.3d

18   788, 792 (9th Cir. 1997).

19        With these standards in mind, this Court turns to Hume Smith and NCI's challenges to

20   the September 12 order.

**Disinterestedness**

22        Hume Smith and NCI argue that Trustee Hawkins failed to demonstrate that Mr. Allen

23   is disinterested to undermine the September 12 order's approval of Mr. Allen.

24        A chapter 7 trustee is obligated to "collect and reduce to money the property of the

25   estate for which such trustee serves."  11 U.S.C. § 704(a)(1).  Subsection (a) of 11 U.S.C. §

26   327 ("section 327") authorizes a trustee, "with the court's approval, [to] employ one or more

27   attorneys . . . that do not hold or represent an interest adverse to the estate, and that are

28   **disinterested** persons, to represent or assist the trustee in carrying out the trustee's duties under

6

this title." (Bold added.) 11 U.S.C. § 101(14)(A) defines a "disinterested person" to include a person who "is not a creditor, an equity security holder, or an insider." "A person who is not disinterested as that term is defined in § 101(14) is disqualified from acting as a professional for the estate." *In re Capitol Metals Co., Inc.,* 228 B.R. 724, 726-727 (9th Cir. BAP1998).

Section 327 generally "imposes the 'disinterested' requirement on all general and special counsel employed under that section . . ." *In re Maximus Computers, Inc.,* 278 B.R. 189, 196 (9th Cir. BAP 2002). The applicant bears the burden of proving that "the standards for appointment have been met." *In re Capitol Metals,* 228 B.R. at 727. "The Bankruptcy Code imposes particularly rigorous conflict-of-interest restraints upon the employment of professional persons in a bankruptcy case." *Rome v. Braunstein*, 19 F.3d 54, 57 (1st Cir. 1994). "The disinterestedness requirements must be strictly enforced." *In re Hot Tin Roof, Inc.*, 205 B.R. 1000, 1003 (1st Cir. BAP 1997). Section 327(a) has been interpreted "to mean that the attorney must not represent an adverse interest relating to the services which are to be performed by that attorney." *In re Fondiller*, 15 B.R. 890, 892 (9th Cir. BAP 1981).

Hume Smith and NCI characterize Mr. Allen as "a creditor because in a contingency-fee arrangement, he assumed the risk of non-recovery" and may assert lien or other rights against a recovery in the malpractice/bad faith action to affect potential negotiation in the malpractice/bad faith action. Hume Smith and NCI thus conclude that Mr. Allen is not disinterested.

The September 12 order characterized Mr. Allen as "disinterested" in the absence of his enforceable claim against Hummer. The September 12 order explained that the "only persons having an obligation to Allen under his contingency fee agreement would be the other parties to that agreement, his clients [the Hartys]." The September 12 order pointed to the absence of legal authority to establish Mr. Allen's right to payment enforceable against Hummer arising from a contingency fee agreement with the Hartys.

Hume Smith and NCI fail to demonstrate error in the September 12 order's finding that Mr. Allen is disinterested. Mr. Allen is not a creditor of the Hummer bankruptcy estate and lacks an enforceable claim against Hummer. Hume Smith and NCI fail to substantiate that Mr.

1   Allen's fee arrangement or relationship with the Hartys relinquishes his disinterested status
2   under section 327(a).  Hume Smith and NCI identify no adverse interest relating to his services
3   for Trustee Hawkins to question Mr. Allen's disinterestedness.  As such, the September 12
4   order is not in error as to Mr. Allen's disinterestedness.

5                                    **Conflict of Interest**

6          Hume Smith and NCI argue that Mr. Allen's conflict of interest precludes his
7   employment as special counsel for the Hummer bankruptcy estate.

8          Section 327(c) provides that "a person is not disqualified for employment under this
9   section solely because of such person's employment by or representation of a creditor, **unless**
10  **there is objection by another creditor** or the United States trustee, in which case the **court**
11  **shall disapprove such employment if there is an actual conflict of interest**."  (Bold added.)
12  "Section 327(c) allows the appointment of counsel to represent the trustee, even where counsel
13  represents a creditor, where the court finds no 'actual conflict of interest.'"  *Stoumbos v.*
14  *Kilimnik*, 988 F.2d 949, 964 (9th Cir. 1993).  When "the trustee seeks to appoint counsel only
15  as 'special counsel' for a specific matter, there need only be no conflict between the trustee and
16  counsel's creditor client with respect to the specific matter itself." *Stoumbos*, 988 F.2d at 964.
17  "Thus, where the interest of the special counsel and the interest of the estate are identical with
18  respect to the matter for which special counsel is retained, there is no conflict and the
19  representation can stand."  *In re AroChem Corp.,* 176 F.3d 610, 622 (2nd Cir.1999).

20         A conflict of interest is "actual and warrants disqualification under § 327(c) if there is
21  active competition between two interests, in which one interest can only be served at the
22  expense of the other." *In re Johnson*, 312 B.R. 810, 822 (E.D. Va. 2004) (internal quotations
23  and citations omitted).  When "an attorney is employed by both the trustee and a creditor, there
24  is no 'actual conflict of interest' warranting disqualification unless (i) the interests of the trustee
25  and the creditor are in fact directly conflicting or (ii) the creditor is actually afforded a
26  preference that is denied to other creditors.  *In re Johnson*, 312 B.R. at 822.  "§ 327(c) makes
27  clear that an attorney's representation of a creditor does not per se deprive that attorney of
28  'disinterested' status, but rather becomes a potential disqualifier for employment to represent

1   the trustee on the conceptually distinct theory of 'actual conflict of interest.'"   *In re Kobra*

2   *Properties*, 406 B.R. 396, 403 (E.D. Cal. 2009).

3   Hume Smith and NCI note that an "actual conflict of interest" mandates

4   disqualification.  *See In re First Jersey Securities, Inc.* 180 F.3d 504, 509 (3rd Cir. 1999); *In Re*

5   *Marvel Entertainment Group, Inc.*, 140 F.3d 463, 476 (3d Cir.1998).  Hume Smith and NCI

6   continue that a "mere appearance of a conflict" warrants denial of employment in that "section

7   327(a) is designed to limit even appearances of impropriety to the extent reasonably

8   practicable, doubt as to whether a particular set of facts gives rise to a disqualifying conflict of

9   interest normally should be resolved in favor of disqualification."  *Rome*, 19 F.3d at 60.  Hume

10  Smith and NCI characterize as an "actual conflict of interest" the status of "a lawyer who

11  represents a creditor, or a witness in ongoing litigation."

12  Hume Smith and NCI contend that Mr. Allen faces an actual conflict of interest in that

13  he represents two interests (the Hartys and Trustee Hawkins) which pursue the same entities

14  (Hume Smith and NCI) for payment.  Hume Smith and NCI argue that Mr. Allen, as counsel

15  for the Hartys and Trustee Hawkins, is unable to "maintain allegiances to both set of interests."

16  Hume Smith and NCI contend that a settlement on the bankruptcy estate's behalf will dilute the

17  Hartys' recovery whereas a settlement outside of bankruptcy "in exchange for the Hartys

18  withdrawing their proofs of claims in the bankruptcy case would yield a greater recovery to the

19  Hartys."

20  The September 12 order noted the absence of "active competition between both

21  interests [the Hartys and Trustee Hawkins] represented by Allen" given that the Hartys have no

22  direct claim against Hume Smith or NCI and "the interests of the Hartys and the estate are

23  aligned."   The September 12 order further explained that Mr. Allen's representation in

24  malpractice/bad faith action does not afford a preference to the Hartys in that any recovery

25  would be shared pro rata by the Hartys and NCI to the extent the estate had sufficient funds to

26  pay unsecured creditors.

27  Mr. Allen, the Hartys and Trustee Hawkins share a common interest to pursue the

28  malpractice/bad faith action to recover monies to which debtor Hummer is allegedly entitled.

9

The September 12 order correctly concluded that the interests of the Hartys, as creditors, and the Hummer bankruptcy estate are aligned and create no actual conflict for Mr. Allen. Hume Smith and NCI's points as to settlement negotiations raise no more than a potential conflict, not an actual conflict required by section 327(c) for disqualification. The September 12 order correctly noted that problems as to settlement are "systemic to § 327(c), applying to every instance where a creditor's attorney is employed by the Chapter 7 trustee." Hume Smith and NCI's points as to Mr. Allen taking contrary positions in the bad faith/malpractice action are imprecise and fail to substantiate "special circumstances" and in turn an actual conflict of interest. Hume Smith and NCI fail to demonstrate error in the September 12 order's finding no actual conflict of interest.

### Mr. Allen As A Potential Witness In The Malpractice/Bad Faith Action

Hume Smith and NCI note that Mr. Allen's settlement negotiations during the personal injury action constitute a "central" topic in the malpractice/bad faith action and qualify Mr. Allen as a percipient witness to disqualify Mr. Allen as litigation counsel in the malpractice/bad faith action. Hume Smith and NCI point to Indiana Rules of Professional Conduct, Rule 3.7(a), which is applicable to the malpractice/bad faith action and which precludes a lawyer to "advocate at a trial in which the lawyer is likely to be a **necessary** witness." (Bold added.)

The September 12 order questioned Mr. Allen's status a "necessary" witness in the malpractice/bad faith action given the absence of a "showing that Allen's testimony will be *necessary*" and that "such evidence can be offered only through Allen's testimony rather than documentary evidence or testimony of the Hartys or other members of Allen's firm." The September 12 order surmised that Mr. Allen's testimony may be limited to authenticate correspondence as to settlement negotiations and that "he may not need to be called at all."

Hume Smith and NCI fail to demonstrate that Mr. Allen is a necessary witness in the malpractice/bad faith action in that the focus is on Hume Smith and NCI's decline to accept a policy limits offer to settle the personal injury action. Mr. Allen is not a necessary witness to settlement negotiations in the personal injury action, evidence of which will come from sources

10

1   other than Mr. Allen and including no less than the Hartys.  "A necessary witness is not the

2   same thing as the 'best' witness. If the evidence that would be offered by having an opposing

3   attorney testify can be elicited through other means, then the attorney is not a necessary

4   witness. In addition, of course, if the testimony is not relevant or is only marginally relevant, it

5   certainly is not necessary." *Harter v. University of Indianapolis,* 5 F.Supp.2d 657, 665 (S.D.

6   Ind. 1998).

7   Hume Smith and NCI's reply papers emphasize their "oral communications" with Mr.

8   Allen and characterize them as "critical" as to "whether NCI had an obligation to accept the

9   settlement offer."  Hume Smith and NCI continue that "oral conversations . . . are relevant to

10  explain the proposed contractual terms of the settlement and NCI's response to the settlement

11  proposals."  Hume Smith and NCI fail to identify precisely Mr. Allen's expected testimony or

12  oral communications to support their points, although they have knowledge of such matters.

13  Hume Smith and NCI fail to establish their reliance on Mr. Allen's testimony with examples.

14  Hume Smith and NCI witnesses are able to cover and elaborate on their oral communications

15  with Mr. Allen and their "nuances" without Mr. Allen's testimony.   Moreover, Trustee

16  Hawkins' evidence to pursue the malpractice/bad faith claims is a matter of his and Mr. Allen's

17  choosing, and they are surely mindful of restrictions of Mr. Allen's witness role.

18  The September 12 order correctly concluded that Mr. Allen is not a necessary witness

19  to the malpractice/bad faith action.

20  **Non-Disclosure Of Information Revealing Conflict Of Interest**

21  Hume Smith and NCI challenge Mr. Allen's employment because Mr. Allen "omitted

22  critical facts demonstrating conflicts of interest" in that his employment applications failed to

23  disclose:

24  1.      His representation of the Hartys in the personal injury action (until such

25  omission was brought to Trustee Hawkins' attention);

26  2.      His compensation arrangement with the Hartys;

27  3.      His potential role as a Hummer creditor arising from his compensation

28  arrangement;

11

4.       His role as a witness to support malpractice claims against Hume Smith and bad faith claims against NCI in that the claims address "refusals to accept settlement offers communicated by [Mr. Allen] to Hume Smith"; and

5.       The need to take in the malpractice/bad faith action positions inconsistent to those Mr. Allen asserted in the personal injury action.

F.R.Bankr.P. 2014(a) addresses employment of professionals, including attorneys, for a bankruptcy estate and requires an employment application to be "accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."   "It is axiomatic that a fiduciary has a duty to disclose any connections with the debtor, creditors, or any other party in interest." *In re AFI Holding, Inc.,* 530 F.3d 832, 852 (9th Cir. 2008).

Nonetheless, a bankruptcy court "has discretion to excuse a failure to disclose." *In re Thomas*, 476 B.R. 579, 587 (N.D. Cal. 2012).  "Once the bankruptcy court acquaints itself with the true facts, it has considerable discretion in determining to allow all, part or none of the fees and expenses of a properly employed professional." *In re Triple Star Welding, Inc.*, 324 B.R. 778, 793 (9th Cir. BAP 2005), *abrogated on other grounds by Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 851 (9th Cir.2008).  "If the bankruptcy court finds no need to take remedial measures, it appropriately can do so in the exercise of its discretion."  *In re Triple Star Welding*, 324 B.R. at 793.

Hume Smith and NCI argue that Mr. Allen's "lack of complete disclosure is troubling" in that Mr. Allen, as litigation counsel, obtained judgments against Hummer for the Hartys, who commenced the involuntary bankruptcy against Hummer as petitioning creditors.  Hume Smith and NCI characterize as "substantial" Mr. Allen's connection with the Hartys, Hummer's biggest creditors.

The September 12 order found as "unintentional error" Mr. Allen's failure to disclose his connections.  The September 12 order further notes that Trustee Hawkins "first brought the matter to the court's attention" and that Mr. Allen's "representation of the Hartys was not being

concealed as the representation was evident from the Hartys' judgment, which was attached to the Hartys' proofs of claim."

Based on the record, this Court is not in position to second guess the September 12 order's finding of unintentional error to disclose Mr. Allen's connections to the Hartys. Although such disclosure with the first application would have been preferable, Hume Smith and NCI point to no prejudice arising from delayed disclosure to warrant disqualifying Mr. Allen and his firm, especially given the high likelihood that the Hummer bankruptcy estate and its creditors would be best served by Mr. Allen's continued representation.

## Denial Of Discovery

Hume Smith and NCI challenge the September 12 order's approval of Mr. Allen's employment without the opportunity to conduct discovery, as permitted through F.R.Bankr.P. 9014(c).  Hume Smith and NCI contend they should have been allowed to conduct discovery "regarding Allen's compensation arrangement with the Hartys and the resulting conflicts of interest."   Hume Smith and NCI fault the absence of "all facts" whether Mr. Allen has a conflict of interest in his representation of the Hummer bankruptcy estate in that Mr. Allen "may have a more generous contingency fee arrangement with the Hartys than the contingency fee arrangement he has with the bankruptcy estate."

Since the September 12 order correctly concluded that Mr. Allen had no actual conflict of interest, Hume Smith and NCI's requested discovery was unnecessary, especially given the absence of prejudice to them from denial of discovery.   Hume Smith and NCI fail to demonstrate the significance of discovery into Mr. Allen's compensation arrangement with the Hartys in that the bankruptcy court's focus on approval of Mr. Allen's employment was his agreement with Trustee Hawkins, not the Hartys.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court finds that the September 12 order is supported by the record and proper analysis to approve Mr. Allen's employment, to deny Hume Smith and NCI's attempt to disqualify Mr. Allen, and to deny Hume Smith and NCI's requested

1  discovery.  This Court AFFIRMS the September 12 order and DIRECTS the clerk to close this

2  action.

3

4  IT IS SO ORDERED.

5      Dated:    __February 3, 2014__          ___/s/ Lawrence J. O'Neill___

6                                              UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14